# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

LAKEISHA HARRIS, MANUEL  D.
CHAVOUS, YOLANDA  S. BAKER,
LINDA  A. MORRIS, ANTWONE
P. FOWLER, and KATELYN CLARK,
on behalf of themselves and the class of
all persons applying for disability to be
determined by the Defendants,

      Plaintiff,

vs.                                        Case No. _____

RONALD  D. DeSANTIS,  in his official
capacity as Governor of the State of Florida,
JOSEPH  A. LADAPO, M.D., Ph.D., in his
official capacity as Surgeon General of the
State of Florida, MICHELE TALLENT,
in her official capacity as Deputy Secretary
for Operations of the Department of Health
of the State of Florida, and STATE OF
FLORIDA DIVISION OF DISABILITY
DETERMINATIONS, a division of the
Department of Health of the State of Florida,

      Defendants.

_____/

## <u>COMPLAINT</u>
## <u>FOR DECLARATORY AND INJUNCTIVE RELIEF</u>
### (No monetary claims)

COME  NOW  the Plaintiffs, LAKEISHA  HARRIS, MANUEL   D.

CHAVOUS, YOLANDA  S. BAKER, LINDA  A. MORRIS, and KATELYN

CLARK, by and through their undersigned attorney, bring this action for

declaratory and injunctive relief against the Defendants, RONALD D. DeSANTIS, in his official capacity as Governor of the State of Florida, JOSEPH A. LADAPO, M.D., Ph.D., in his official capacity as Surgeon General of the State of Florida, MICHELE TALLENT, in her official capacity as Deputy Secretary for Operations of the Department of Health of the State of Florida, and the STATE OF FLORIDA DIVISION OF DISABILITY DETERMINATIONS, a division of the Florida Department of Health, and allege as follows:

## INTRODUCTION

1. The Social Security Administration of the United States government (hereinafter referred to as "SSA") operates two programs for the administration of benefits for persons who become disabled and are no longer able to work and at a level of substantial gainful employment. One is pursuant to *42 U.S.C., Chapter 7, Sub-chapter II of the Social Security Act* (hereinafter referred to as "Title II") for disabled persons to receive benefits on their own Social Security account (hereinafter referred to as "DIB") or survivors on the account of a related worker (hereinafter referred to as "Survivor's Benefits"). The other is pursuant to *42 U.S.C., Chapter 7, Sub-chapter XVI of the Social Security Act* (hereinafter referred to as "Title XVI") and is designed to provide benefits for persons who cannot work

at substantial gainful activity level but have no credits or insufficient credits to receive DIB benefits and meet qualifications under the Social Security regulations as having insufficient income and resources (hereinafter referred to as "SSI").

2. Congress directed that, pursuant to *42 U.S.C., §421(a)*, determinations of whether a person is disabled for DIB under Title II are to be made initially by a State agency according to the procedures, including limitations on accuracy and time, provided in regulations promulgated by the Commissioner of Social Security (hereinafter referred to as "Commissioner"). Pursuant to *42 U.S.C., §1383b(a)*, determinations of whether a person is disabled for SSI under Title XVI are to be made in the same manner as in *42 U.S.C., §421*, which is by a State agency according to the procedures, including limitations on accuracy and time, provided in regulations promulgated by the Commissioner.

3. SSA has provided regulations for the determinations of disability by the State agencies for DIB under Title II in *20 C.F.R., Part 404, Subpart Q* and for determinations of disability for SSI under Title XVI in *20 C.F.R., Part 416, Subpart J*. Those regulations provide in *20 C.F.R., §404.1641(b) and §416.1041(b)* for a target level of completion of initial claims, which is the optimum expected. Those regulations also provide in *20 C.F.R., §404.1641(c) and §416.1041(c)* for a threshold level of completion of initial claims, which is the minimum level of acceptance.

The processing target time levels provided for in *20 C.F.R., §404.1642(b) and §416.1042(b)* for Title II claims is 37 days and for Title XVI claims is 43 days. The threshold levels of performance (minimum level of acceptance) provided for in *20 C.F.R., §404.1642 ( c) and §416.1042 ( c)* for Title II claims is 49.5 days and for Title XVI claims is 57.9 days.

4.    Pursuant to *42 U.S.C., §421(d)*, any individual dissatisfied with the determination regarding DIB under Title II made by the State agency has the right to a hearing as provided for in *42 U.S.C., §405(b)* and any individual dissatisfied with the determination regarding SSI under Title XVI made by the State agency has the same right to a hearing as persons applying for DIB under Title II  pursuant to *42 U.S.C., §1383b(a).*

5.    The regulations promulgated by the Commissioner provide for an initial determination by the State agency, a reconsideration determination by the State agency, a hearing before a SSA Administrative Law Judge, and administrative and court appeal reviews identified in *20 C.F.R., §404.900(a) and §416.1400(a).*

6.    The State of Florida has authorized the Division of Disability Determinations pursuant to *§20.43 (3)(h), Fla. Stat. (2022)* as the division of the Department of Health of the State to make these disability determinations.

7. The Defendants are taking substantial and excessive delays in the performance of their duties of making disability determinations, taking five and six times as long as the maximum time provided for in the regulations, a delay that is contrary to the laws and regulations of the United States and that denies Plaintiffs and their class of procedural due process guaranteed by the Fourteenth Amendment to the U.S. Constitution. This delay causes irreparable harm to Plaintiffs and the class they represent.

## PARTIES

### A. Individual Plaintiffs and Class Representatives:

8. Plaintiff, LAKEISHA HARRIS, is a resident of Pinellas County, Florida who has filed an Application for DIB on February 15, 2022. No determination has been made on that Application. As of July 27, 2023, that is 527 days (more than 17½ months).

9. Plaintiff, MANUEL D. CHAVOUS, is a resident of Pinellas County, Florida who has filed by facsimile communication on August 31, 2022, an Application for SSI. No determination has been made on that Application. As of July 27, 2023, that is 330 days (11 months).

10. Plaintiff, YOLANDA S. BAKER,  is a resident of Pinellas County, Florida who has filed an Application for DIB on November 24, 2021. That claim

was disapproved by the Division of Disability Determinations by Notice from SSA dated October 7, 2022, which is 317 days from the date of her Application (approximately 10½ months). She electronically filed a Request for Reconsideration on November 10, 2022, (34 days or slightly more than 1 month after the denial), which Reconsideration must be determined by the Florida Division of Disability Determinations. No determination has been made on the Request for Reconsideration. As of July 27, 2023, that is 265 days (more than 8-3/4 months). The total wait is 616 days (20½ months).

11. Plaintiff, LINDA A. MORRIS, is a resident of Pinellas County, Florida who has filed an Application for DIB on August 31, 2022. No determination has been made on that Application. As of July 27, 2023, that is 330 days (11 months).

12. Plaintiff, ANTEONE P. FOWLER, is a resident of Pinellas County, Florida who has filed an Application for DIB on February 15, 2023. No determination has been made on his Application. As of July 27, 2023, that is 135 days (almost 5½ months).

13. Plaintiff, KATELYN CLARK, is a resident of Pinellas County, Florida who has filed by facsimile communication on August 16, 2021, an Application for Survivor's Benefits under Title II as a surviving disabled child of her father,

Raymond F. Brightwell, Jr., as well as an Application for SSI benefits under Title XVI. Those claims were disapproved by the Division of Disability Determinations by Notice from SSA dated July 11, 2022, which is 329 days (almost 11 months) after her Applications were filed. She electronically filed a Request for Reconsideration on August 18, 2022, which Reconsideration must be determined by the Florida Division of Disability Determinations. No determination has been made on the Request for Reconsideration. As of July 27, 2023, that is 343 more days (more than 11 months) since filing her Request for Reconsideration. That is a total wait of 710 days (23-2/3 months).

**B.  Defendants:**

14. Defendant, RONALD D. DeSANTIS, is the Governor of the State of Florida and, pursuant to Article IV, Section 1 of the Florida Constitution, is responsible for the operation of the State government, including the Department of Health and its Division of Disability Determinations, and is sued herein  in his official capacity as Governor.

15.  Defendant, JOSEPH A. LADAPO, M.D., Ph.D., is the Surgeon General of the State of Florida and, pursuant to *§20.43(2), Fla. Stat. (2022)* , is responsible for the operation of the Department of Health of the State of Florida

including the Division of Disability Determinations, and is sued herein in his official capacity as Surgeon General.

16. Defendant, MICHELE TALLENT, is Deputy Secretary for Operations of the Department of Health of the State of Florida, and is responsible for the operation of the Division of Administration, the Division of Medical Quality Assurance, and the Division of Disability Determinations of the Department of Health of the State of Florida and is sued herein in her official capacity as Deputy Secretary for Operations of the Department of Health of the State of Florida.

17. Defendant, STATE OF FLORIDA DIVISION OF DISABILITY DETERMINATIONS, is a Division of the Department of Health of the State of Florida authorized by *§20.43(3)(h), Fla. Stat. (2022)* and charged with the responsibility of making Disability Determinations on all Applications and Requests for Reconsideration referred to it by SSA.

## JURISDICTION AND VENUE

18. Jurisdiction of this Court is invoked pursuant to *28 U.S.C., §§1331 and 1343*.

19. This Court has authority to grant relief under the Declaratory Judgment Act, *28 U.S.C. §§ 2201, 2202*, and *28 U.S.C. § 1343(a)*, and *42 U.S.C. § 1983.*

20.  In addition, this Court has authority to issue injunctive relief under the All Writs Act, *28 U.S.C. § 1651*.

21.  This Court's jurisdiction is properly exercised over Defendants in their official capacities, as Plaintiffs are seeking declaratory, injunctive, and/or mandamus relief only. *Ex parte Young, 209 U.S. 123 (1908).*

## **CLASS ACTION**

22.  Plaintiffs are all members of the class of all persons residing in the State of Florida who have now filed or in the future will file an Application under Title II for DIB or survivor's benefits, or under Title XVI for SSI, or for both, and whose Application or Request for Reconsideration must be determined by the Division of Disability Determinations but which Application or Request for Reconsideration has not yet been determined as of the date of the filing of this action. Plaintiffs bring this action on their own behalf and on behalf of all other Social Security DIB, Survivor Benefits, and SSI applicants similarly situated who are to have their disability determined by the State of Florida Division of Disability Determinations.

23.  The class is so numerous that: (a) joinder of all members is impractical as  the Florida Division of Disability Determinations (herein after referred to as "Florida DDD") has 110,069 initial applications pending as of May 31, 2023, and

23,709 Requests for Reconsideration pending as of May 31, 2023; (b) there are questions of law and fact common to the class in that questions of whether the Due Process clause of the Fourteenth Amendment to the U.S. Constitution provides relief to the class and its members from excessive delay in determination of their cases, or whether the regulations of the Social Security Administration provide such relief; ( c) the claims of the representative Plaintiffs are typical of the claims of the class in that members of the class are routinely delayed excessively in the determination of their DIB, Survivor Benefits and/or SSI claims as shown by the 110,069 initial applications pending before the as of May 31, 2023, and the Florida DDD made determinations in fewer than that number of initial determinations in the entire year of 2022, and by the 23,709 Requests for Reconsideration pending as of May 31, 2023, and the Florida DDD made determinations in approximately the same number of Reconsiderations in the entire year of 2022; and (d) the representative Plaintiffs will fairly and adequately protect the interests of the class.

24.   The Defendants have acted or refused to act on grounds generally applicable to the class so that declaratory and injunctive relief are appropriate respecting the class as a whole. The Defendants are engaged in substantial and excessive delay in the determinations that constitute the function of the Florida

DDD, which substantial and excessive delays apply generally to the class as a whole.

## FACTUAL BACKGROUND

25.    Plaintiff, LAKEISHA HARRIS, is a 52 year old, single woman who is a former member of the U.S. Naval Reserve. She worked for a number of years as a bus driver, both for the school system and for the local bus company. More than 15 years ago, she worked her way into customer service. She worked a second job as a sales clerk in a retail store. She moved to Georgia and worked there for five years in different jobs. She had a stroke at age 38 while in Georgia. She returned to Florida because she had family that could help her. She again worked in a store as a clerk and again as a trolley/bus driver. She worked the last 8-9 years for the school system, first as a cafeteria worker and then as a janitor, which the school system calls "Plant Operator". She has been diabetic for years. In 2021, she caught COVID. Following the infection period of COVID, she had another stroke that appears to be a result of COVID. Then she was found to have breast cancer. She is still treating for it though currently cancer-free. Following her bout with COVID and her stroke, Ms. Harris now suffers from nerve disorder as a result. Consequences include serious incontinence and balance problems requiring the use of a cane. She has not been able to work. Even if she was found

capable of sedentary work, that would result in being found disabled because she is over the age of 50. *20 C.F.R., Pt. 404, Subpt P, §201(g) and §201.12.* She lives with her mother now, who also has had two strokes. Her mother treats her as if she were still a teenager, and this causes great difficulty for Ms. Harris. Her mother still fusses at her for joining the U.S. Naval Reserve. She desperately needs to be able to have her own place. It has been more than 527 days (more than 17½ months) since she filed her Application. This delay prevents her from moving on with her life. A later determination would not undo the stress of having to live with in the circumstance of being considered not an adult.

26. Plaintiff, MANUEL D. CHAVOUS, is a 47 year old man who is single who has back, hip, and hand problems. He is diagnosed with avascular necrosis of the right hip, and will ultimately require a total hip replacement. He has a prescription for a four-point cane. His limitations from his back and hip may not allow any work, but if they did, it would be for a short period of time and no more than sedentary or light, and his limitations from his hand would very likely preclude any employment. *SSR 85-15; https://www.ssa.gov/OP_Home/rulings/di/02/SSR85-15-di-02.html.* He has to rely on others for a place to stay for a while, and then has to go rely on someone else, and cannot stay anywhere for long. He has child support obligations that he

cannot fulfill, which in turn has caused his driver's license to be revoked. This delay prevents him from being able to resolve his living and child support problems. A later determination would not provide for his child support obligations when they are due, and would not undo having to be homeless and move from one friend or relative to another without any place of his own.

27. Plaintiff, YOLANDA S. BAKER, is a 53 year old single woman with back, knee, and shoulder pain. She dropped out of school but later got an on-line diploma. She has worked in hotel/motel housekeeping. She is on food stamps and Medicaid for the medically needy. Her feet get a burning sensation and her knee swells if she is on her feet much. She lives with her son. They do not have enough to pay their bills. She is one month behind in paying rent. Her landlord has been understanding so far, but cannot afford to let her get very far behind in rent. She is in danger, therefore, of becoming homeless. She has not been able to work. Even if she was found capable of sedentary work, that would result in being found disabled because she is over the age of 50. *20 C.F.R., Pt. 404, Subpt P, §201(g) and §201.12.* A substantial delay in the determination of her case will cause irreparable harm as the living day-to-day without knowing whether there is any relief for her to pay her bills and maintain her own place to live cannot be undone.

28.  Plaintiff, LINDA A. MORRIS, is a single (separated for 27 years), 49 year old woman. She worked as a house cleaner. She had her own business as a house cleaner. She then worked a second job cleaning offices at the same time she was cleaning houses. She had COVID in August, 2021, but returned to work after four months recovering from it. She then got COVID again in January, 2022, she thinks from her work. Following her second bout with COVID, she has developed osteoarthritis, rheumatoid arthritis (which is different from osteoarthritis in that it is an autoimmune disease), and fibromyalgia. Her diabetes has now gotten out of control. She has problems breathing and problems getting up in the morning. She also has developed neuropathy, heart problems and bleeding in her eyes. She has lost her home. She cannot work. She has trouble keeping a place to live, and has had to sleep in the car. A later determination will not undo the hardship of not being able to maintain her own place.

29.  Plaintiff, ANTWONE P. FOWLER, is a divorced, 60 year old man who needs a total knee replacement but must first have vascular surgery for a blood clot in his leg. He also has hip and back pain. He dropped out of school in the ninth grade, and has difficulty understanding things he might try to read. He has done roofing work in the past, and odd labor jobs. He lives with his 80-year old mother and a cousin. He has to occasionally try a half day of work to

-14-

contribute to his needs even though that leaves him in extreme pain and unable to do much of anything the next day. Since he is unable to do the labor work he has done in the past, and would be limited to no more than light or sedentary work, and any such work would require more than a minimal vocational adjustment, he would easily qualify for disability benefits. *20 C.F.R., Pt. 404, Subpt P, §202.00(e).* This delay is causing greater difficulty in day-to-day living. A later determination will not undo the pain he has to endure.

30.    Plaintiff, KAITLYN CLARK, has Autism Spectrum Disorder, Attention Deficit Hyperactivity Disorder Inattentive Presentation, Major Depressive Disorder, Generalized Anxiety Disorder, and Specific Learning Disorder Mathematics along with Congenital Nystagmus (involuntary to-and-fro movements of the eye persisting lifelong), astigmatism associated with nystagmus (much more prevalent than astigmatism in the general population), accommodative insufficiency (a binocular vision anomaly that is characterized by an inability to focus or sustain focus for near vision), Social Anxiety, Cerebral Palsy, history of periventricular leukomalacia (characterized by the death of the brain's white matter due to softening of the brain tissue), history of Chiari I malformation (structural defects where the lower part of the brain presses on and through an opening in the base of the skull and cerebellum into the spinal canal),

sleep disorder, nausea, and headaches. She is currently 25 years old, but has filed for disability before the age of 22. When she has to interact with other people, she tries to appear more normal, which, for her and other persons with autism spectrum disorder, is known as "masking". She feels unable to work, but needs to be able to try to establish her ability to get by without needing her mother. She attends Vincent House, a clubhouse model, for occupational therapy. She has had difficulty maintaining persistency at Vincent House due to her mental and neurological problems. Vincent House works closely with the Division of Vocational Rehabilitation in trying to get persons with severe mental illness into the work force. Recent recommendations are for part-time employment starting at 3-4 hours a day for 2 days a week in entry-level clerical work that does not involve dealing with the public along with the assistance of a job coach. Part-time employment of this nature qualifies a person as disabled under the Social Security Act. *20 C.F.R., §404.1572 and §416.972* (Florida minimum wage is $11.00 per hour. *https://www.minimum-wage.org/florida;* SGA level for 2023 is $1470 per month; see *www.socialsecurity.gov/OACT/COLA/sga.html).* At that rate, Ms. Clark would not be able to make the monthly SGA level in 3 months. Ms. Clark has always lived with her mother, who is currently 67 years of age. She received disability as a child until terminated upon becoming an adult at age 18. She needs to be able to find

-16-

a way to survive without her mother, and wants very much to be more adult. It has been 710 days (23-2/3 months) since she filed her Application. The significant delay substantially impedes her ability to do so. It causes her greater depression and anxiety about her future. The longer it takes, the harder it will be for her to attempt to establish some level of independence.

31.    All of the named Plaintiffs are struggling financially and currently qualify as below poverty level. *Federal poverty level (FPL);* *https://www.healthcare.gov/glossary/federal-poverty-level-fpl/* All but one of the named Plaintiffs have no income at all.

32.    The class represented by the named Plaintiffs includes thousands of claimants with a full spectrum of problems. However, many have similar problems to those of the named Plaintiffs: many have problems finding a place to stay, many are homeless, many become a burden on family and friends, many lose friends due to the additional burden they present, many have difficulty finding help with daily functioning, many have obligations such as to children they cannot meet, many have difficulty with obtaining appropriate and sufficient medical care for their medical problems, and many other problems caused by this substantial and excessive delay.

33.    In the last year and 5 months, 39.8% of the initial claim's determinations resulted in an award at the initial level. An additional 14.7% of Reconsideration determinations have resulted in an award at the Reconsideration level. That means that, by the time the Reconsideration process is completed, a process that should take no more than 4 to 6 months, 43.2 % of the determinations made initially result in award of benefits. That means that approximately 47,550 of 110,069 initial cases currently pending for members of the class would be found eligible for benefits by the Florida DDD.

34.    A significant portion of those who do not get awarded benefits by the initial and Reconsideration process are waiting for an opportunity to have a full hearing before an Administrative Law Judge. *42 U.S.C., §405(b) and §1383b(a), 20 C.F.R., §404.929 and §416.1429.*

35.    Congress intended that the administrative process before the State agencies be limited in time so as to give those who do not receive an award through that process an opportunity to have a full hearing as expeditiously as SSA could provide while affording full procedural rights to the claimants.

36.    Simply waiting for a determination to be made, no matter how delayed, does not provide adequate relief. Such a wait does not give the homeless a place to stay while waiting. Such a wait does not provide the means to meet obligations

to others while waiting. Such a wait does not prevent the additional burden on family and friends while waiting. Such a wait does not return friends who have been lost due to this burden. Such a wait does not provide needed medical care during a time critical to the treatment of illnesses and injuries. Such a wait does not correct any of the day-to-day losses and hardships suffered during such a wait.

37.  Congress specifically authorized State agencies to make initial disability and Reconsideration determinations under the Social Security Act. *42 U.S.C., §421(a)(1).* Florida's DDD has increased the backlog of cases significantly to the point that Plaintiffs and the class they represent have to wait an excessive amount of time to get a determination of their cases.

38.  At the end of 2016, Florida had 26,807 pending initial claims. By February, 2020, the month before COVID, that was 43,899, an increase of 17,092, or 63.76%. As of May 31, 2023, Florida DDD has a current backlog of initial claim cases of 110,069, an increase of 66,170 from February, 2020, or 150.73%, and an increase from the end of 2016 of 83,262, or 310.60%. In all of 2022, Florida DDD completed determinations on 98,743 initial claims, which is fewer cases than the current backlog. This increase in backlog causes significant delay in the determination of initial claims. This increase in backlog was not caused by greater numbers of cases. In the 4 years 2013-2016, Florida DDD had an average

of 194,310 initial claims to determine each year. In the 6 years 5 months of January, 2017 - May, 2023, Florida DDD had an average of 171,544 initial claims to determine each year. This is 22,766 fewer cases every year for Florida DDD to make initial determinations while increasing the backlog of cases an average of 12,975 cases per year.

39.  At the end of 2016, Florida had 6,941 pending Reconsideration claims. By February, 2020, the month before COVID, that was 11,543, an increase of 4,602, or 66.30%. As of May 31, 2023, Florida DDD has a current backlog of Reconsideration claim cases of 23,709, an increase of 12,166 from February, 2020, or 105.40%, and an increase from the end of 2016 of 16,768, or 241.58%. In all of 2022, Florida DDD completed determinations on 21,846 Reconsideration claims, which is fewer cases than the current backlog. This increase in backlog causes significant delay in the determination of Reconsideration claims. This increase in backlog was not caused by greater numbers of cases. In the 4 years 2013-2016, Florida DDD had an average of 67,156 new Reconsideration claims to determine each year. In the 6 years 5 months of January, 2017 - May, 2023, Florida DDD had an average of 45,503 new Reconsideration claims to determine each year. That is 21,653 fewer cases per year. In that same time period, Florida DDD

increase the backlog of Reconsideration cases by an average of 1,896 cases per year.

40.  The Commissioner has established accuracy standards of a minimum of 90.6% cases decided accurately according to the regulations and a target of between 97% and 99% cases decided accurately according to the regulations. *20 C.F.R., §404.1643 and §416.1043.* Plaintiffs have no knowledge of Florida's DDD having failed to meet the accuracy requirements and presume for the purposes of this action that Florida DDD has met the minimum standards for accuracy throughout any time periods described herein. Plaintiffs' request for mandatory injunction to obtain timely decisions is intended to be obtained within the parameters of accuracy required by the regulations, and Defendants should be capable of doing so.

41.  The regulations promulgated by the Commissioner state that SSA will take action for failure to meet the required standards if two of three are not met and one of those not met is the accuracy standard. *20 C.F.R., §404.1650 and §416.1050.* Though the regulations refer to two of three areas of performance measurement, the regulations clearly state that SSA measures performance of State agencies with regard to disability determinations in only two areas, (1)

processing time, and (2) quality of documentation and decisions on claims. *20 C.F.R., §404.1661 and §416.1061* and *20 C.F.R., §404.1640 and §416.1040.*

42.  The only remedies available to SSA for failure of the State agencies to comply is a period of SSA support followed by a year's grace period that would end in termination of the State agency's participation. *20 C.F.R., §404.1670 and §416.1070.* These "remedies" are ineffective for protecting the rights of Plaintiffs and the class they represent from excessive backlog and delay. SSA is not structured to be able to handle the excessive backlog created by Florida DDD so that SSA can only be of minor assistance regarding this excessive backlog. Additionally, since only two areas are used in evaluating Florida DDD performance, as long as Florida DDD meets the accuracy requirements, there are no limits placed on Florida DDD regarding timeliness even though Congress intended that there be such timeliness limits.

43.  Florida DDD cannot assert that the increase in delay is caused by COVID. There was a significant increase in the backlog, causing a significant increase in the delay of determinations in the three years prior to COVID. Additionally, comparison to another large state shows that the increase in backlog is significantly less in the other state. In February, 2020, California had 53,575 initial claims pending and 14,931 Reconsideration claims pending. In May, 2023,

California had 67,262 initial claims pending, an increase of 13,687, or 25.55%, and 20,870 Reconsideration claims pending, an increase of 5,939, or 39.78%. This compares to the 150.73% increase in backlog in initial claims pending and increase in Reconsideration claims pending of 105.40% increase in backlog by Florida DDD from February, 2020 through May, 2023.

44. To qualify for disability, a person must be unable to work and make a living wage. All disability determinations, for both Title II - DIB and Survivor's Benefits, and Title XVI - SSI, are determined according to a five-step formula. *20 C.F.R., §404.1520(a) and §416.920(a).* The first step is that the person is unable to work at SGA level. *20 C.F.R., §404.1520(a)(4)(i) and §416.920(a)(4)(i).* For 2023, that means that no one can qualify for disability in 2023 if they are capable of earning (and would be capable if they were actually earning) more than $1470 per month. *Substantial Gainful Activity; https://www.ssa.gov/OACT/COLA/sga.html* This is an amount just above poverty level for one person, and below poverty level for a family of two or more persons. *Federal poverty level (FPL); https://www.healthcare.gov/glossary/federal-poverty-level-fpl/* All persons, then, who have a claim pending and are awaiting a determination by Florida DDD have to be living with an income at or below poverty level.

45. All Applications for SSI involve limitations of income and resources as a prerequisite to eligibility. *20 C.F.R., §416.1100 and §416.1205.* To be eligible for SSI, a person must have resources of no more than $2000 or, with a spouse, no more than $3000. *20 C.F.R., §416.1205.* Their earned income has to be no more than $1,913 per month, or, if income is not earned, no more than $934 per month. *Social Security Administration; Supplemental Security Income (SSI); 2023 SSI Income and Resource Eligibility Table; https://www.ssa.gov/ssi/* Most, however, have no income and also have much less than $2000 in resources.

## COUNT 1
## §1983 CLAIM FOR RIGHTS UNDER U.S. LAWS

46. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

47. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..." *42 U.S.C., §1983.*

48.   It has been clear for quite some time that the protections of *42 U.S.C.,* *§1983* apply to the statutes and laws of the United States government. *Maine v. Thibodout, 448 U.S. 1, 10, 100 S. Ct. 2502, 65 L. Ed.2d 555 (1980).* There are three principal factors used to determine whether the Federal law creates a right enforceable under *Section 1983*: (1) whether the plaintiffs are among the intended beneficiaries of the law; (2) whether plaintiffs' asserted interests are not so "vague and amorphous" as to be "beyond judicial competence to enforce"; and (3) whether the law imposes a binding obligation upon the State. *Blessing v. Freestone, 520 U.S. 329, 338, 117 S. Ct. 1353, 137 L. Ed.2d 569 (1997).*

49.   Survivor's Benefits were added to the old age benefits provided for in the Social Security Act of 1935 for the express purpose of providing for those who were left behind when a wage-earner could no longer provide for the family. Congress has specifically intended and provided for payment of benefits to children of wage earners who can no longer earn a living wage so long as those children became disabled before reaching the age of 22 years. *42 U.S.C., §402(d)(1).* Congress, therefore, intended Plaintiffs, and the class they represent,  to specifically be the beneficiaries of this Congressional legislation.

50.   Disability benefits were added to the old age benefits beginning in the 1950's for the express purpose of providing a source of income for persons who

could no longer work and earn a living wage. Congress defines the inability to earn a living wage as inability to engage in substantial gainful activity. *42 U.S.C., §423(d)(1)(A).* Congress specifically intended the disability programs for the benefit of those who could not work and earn a living wage, alternatively stated as those who could not engage in substantial gainful activity. *Id.* Plaintiffs and the class they represent are the specific types of persons congress intended to benefit from this legislation.

51. Congress specified that SSI benefits are available only to persons are very poor. *42 U.S.C., §1381a and §1382(a).* Congress, therefore, intended Plaintiffs, and the class they represent, to specifically be the beneficiaries of this Congressional legislation.

52. Congress specifically authorized State agencies to make initial disability determinations under the Social Security Act. *42 U.S.C., §421(a)(1).* Congress specifically intended that the determinations made by the State agencies be made with a great degree of accuracy and within a reasonable time period. *42 U.S.C., §421(a)(2).* The purpose for these requirements was to make sure that persons applying for benefits, such as Plaintiffs and the class they represent, would have their cases determined accurately and within a reasonable time so as to not cause

these persons who are unable to work and make a living wage to be long periods without a way of survival.

53. It has been held that where Congress has provided a comprehensive enforcement scheme that is incompatible with individual enforcement, then Congress has not created a right enforceable by *§1983*, but that a right is established when the only enforcement mechanism is the withdrawal of funds. *Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 252-255, 129 S. Ct. 788, 172 L. Ed.2d 582 (2009).*

54. However, the availability of administrative mechanisms is not necessarily sufficient to foreclose a *§1983* remedy, but rather the burden would be on the defendant to establish that such administrative mechanism would be inconsistent with the Congressional scheme. *Golden State Transit Corp. V. Los Angeles, 493 U.S. 103, 106-107, 110 S. Ct. 444, 107 L. Ed.2d 420 (1989).* "Rarely is a 'remedial scheme sufficiently comprehensive to supplant §1983". *Collier v. Dickinson, 477 F.3d 1306, 1311 (11ᵗʰ Cir. 2007) citing Blessing, 520 U.S. at 347.* In our case, the remedial scheme does not comprehensively address protection of timeliness required of State agencies in making disability determinations. *20 C.F.R., Part 404, Subpart Q and 20 C.F.R., Part 416, Subpart J.*

55. Establishment of a reasonable time limit for completion of determinations by the State agency has been demonstrated by the Commissioner in the regulations authorized and intended by Congress as being less than 2 months. *20 C.F.R., §404.1642( c) and §416.1042( c).* The failure to act timely has been held to be capable of judicial enforcement. *Saint Anthony's Hospital v. Eaglson, 40 F.4th 492, 508 (7ʰ Cir. 2022).* The interests of the Plaintiffs and the interests of the class they represent, therefore, are clearly and easily within the competence of the judiciary to enforce.

56. Congress clearly intended that the State agencies making the determinations of disability do so in a manner that guaranteed the recipients would have their cases determined accurately and timely. *42 U.S.C., §421(a)(2)( c).* Congress, in its declaration of the need for accuracy and timeliness, used the word "shall" to describe its intent for those to occur. *42 U.S.C., §421(a)(2).* The use of the word "shall" indicates a Congressional intent that the conditions of accuracy and timeliness were mandatory. See *Lewis v. Alexander, 685 F.3d 325, 343 (3ʳᵈ Cir. 20123)* (use of the word"shall" when describing aspects of Medicaid Special Needs Trusts was found to demonstrate a congressional mandatory intent). The requirements of accuracy and timeliness, therefore, were considered mandatory, and were aspects of the regulatory scheme of which the states were aware and of which the

states knowingly agreed when agreeing to provide disability determinations for Social Security DIB, Survivors and SSI benefits.

57.  SSA cannot reasonably proceed with processing  the claims for DIB, Survivor's Benefits, or SSI until DDD completes its work. The excessive and unreasonable delay by DDD causes SSA to have to wait on DDD. Defendants' actions, or rather, non-action, has resulted in Plaintiffs and the class they represent in suffering an excessive and significant delay in the determination of their disability claims with the consequence that irreparable harm has occurred and will continue to occur.

## COUNT II
## PROCEDURAL DUE PROCESS CLAIM

58.  Plaintiffs  reallege and incorporate by reference all preceding paragraphs.

59.  The *Fourteenth Amendment to the U.S. Constitution* provides in part that no State shall deprive any person of life, liberty or property without due process of law.

60.  Procedural due process embodies the rules of fair play which are associated with differing types of proceedings and differing rights to be protected, and require that the procedures utilized are fair and due. *Hannah v. Larch, 363 U.S. 420, 442, 80 S. Ct. 1502, 4 L. Ed.2d 1307 (1960).*

-29-

61. The requirements of procedural due process apply only to the deprivation of interests encompassed by the *Fourteenth Amendment's* protection of liberty and property. *Bd of Regents v. Roth,408 U.S. 564, 570, 92 S. Ct. 2701, 33 L. Ed.2d 548 (1972).* However, those interests – property interests – may take many forms. *Id at 576.* To have a property interest, a person clearly must have more than an abstract need or desire for it, but must have a legitimate claim of entitlement. *Id at 577.*

62. Property interests subject to procedural due process protection are not limited to a few rigid, technical forms but rather the term property denotes a broad range of interests that are secured from an independent source. *Perry v. Sinderman, 408 U.S. 593, 601, 92 S. Ct. 2699, 33 L. Ed.2d 570 (1972).* These sources include statutes, *Goss v. Lopez, 419 U.S. 565, 572-573, 95 S. Ct. 729, 42 L. Ed.2d 725 (1975),* regulations, *Logan v. Zimmerman Brush Co., 455 U.S. 422, 431, 102 S. Ct. 1148, 71 L. Ed.2d 265 (1982), County of Monroe, Florida v. U.S. Dep't of Labor, 690 F.2d 1359, 1361-1362 (11th Cir. 1982), Barnes v. Zaccari, 669 F.3d 1295, 1303-1304 (11th Cir. 2012),* express or implied contract, *Sinderman, 408 U.S. at 601-602,* or a mutually explicit understanding, *Id at 602-603.*

63. A property interest has been found to exist in a number of non-traditional circumstances, such as the right to write a surety bond in the U.S.

District Court for the Southern District of Florida, *American Druggists Ins. Co. v. Bogart, 707 F.2d 1229 (11ᵗʰ Cir. 1983)*, the right to have a dance hall application ruled on with due process, *Midnight Sessions, Ltd. v. Phiiladelphia, 945 F.2d 667 (3ʳᵈ Cir. 1991)*, and the right to continued employment as a teacher who had been a teacher for 29 years but did not have tenure, *Johnson v. Fraley, 470 F.2d 179 (4ᵗʰ Cir. 1972)*.

64.    The extent to which procedural due process must be afforded the claimant is influenced by the extent to which he or she may be "condemned to suffer grievous loss", and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest. *Goldberg v. Kelly, 397 U.S. 254, 262-263, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970).*

65.    Procedural due process has been held applicable to the adjudicative administrative proceeding involving the application for Social Security benefits. *Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971).* Approximately 47,550 members of the class have the right to receive benefits that is being denied to them by the significant and excessive delay of the Florida DDD. All are suffering grievous loss of the ability to provide for basic needs of living caused by this delay. The government's interest is simply to meet the accuracy standards, which they could do without this significant and excessive delay.

66.   The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge, 424 U.S. 319 , 333, 96 S. Ct. 893,  47 L. Ed. 2d 18 (1076), Zimmerman Brush Co., 455 U.S. at 437.* A delay of determination of rights for more than 126 days has been held a violation of due process of law. *Fusari v. Steinberg, 419 U.S. 379, 383-384, 95 S. Ct. 533, 42 L. Ed.2d 521 (1975).*

67.   Substantial delays in the context of Social Security benefits has been held to be a violation of the right to due process of law guaranteed by the *Fourteenth Amendment. Andujar v. Weinberger, 69 F.R.D. 690, 694 (S.D. NY 1976).* When there was an allegation of failure to meet a 90-day requirement in rendering a decision, it was held due process required only substantial compliance rather than rigid compliance. *Shands v. Tull, 602 F.2d 1156, 1159-1161 (3rd Cir. 1979).* There is no substantial compliance in our case. Allegations of a sufficiently egregious delay in processing or awarding benefits in the context of Medicaid Part D without justification would be a violation of due process of law. *Machado v. Levitt, 542 F. Supp.2d 185,194-197 (D. MA 2008).* Delay in sending appeal forms without justification was a violation of due process. *Bond v. Comm'r of Soc. Sec., Case No. CV-19-04933-PHX-JAT, 2020 U.S. LEXIS 90014, 2020 WL 2615970 (D. AZ 2020).*

-32-

68.  The delay in named Plaintiffs having their claims determined is caused by the excessive backlog by Defendants. The members of the class generally suffer similar delays because of that same backlog. COVID is not a justification because Defendants were delaying and creating a significant backlog before COVID, and because a comparable State, California, has been able to limit the increase in backlog due to COVID to approximately 25% while Defendants have created an increase in backlog since the outbreak of COVID of more than 150%. All members of the class who would not be entitled to benefits as a direct result of Defendants' determinations and receive benefits directly through the State agency administrative process are being denied the right to a hearing at a meaningful time.

WHEREFORE, Plaintiff prays that this Court:

1.     Take jurisdiction over Court I of this Complaint;

2.     As to Count I:

a.     Declare that the delay by the Defendants in making initial and Reconsideration Social Security disability determinations is in violation of the rights of Plaintiffs and the Plaintiff class provided to them by the laws of the United States of America;

b.     Grant Plaintiffs a mandatory injunction to prevent the Defendants from continuing the significant and excessive delay in making Social

-33-

Security disability determinations as a violation of the rights of Plaintiffs and the Plaintiff class provided to them by the laws of the United States of America, but do so while maintaining statutory and regulatory accuracy requirements;

       c.    Award Plaintiffs' costs of suit and reasonable attorneys' fees and other expenses under *42 U.S.C. § 1988*; and

       d.    Grant such additional relief as the interests of justice may require; and

    3.    As to Count II:

       a.    Declare that the delay by the Defendants in making initial and Reconsideration Social Security disability determinations is in violation of the rights of Procedural Due Process guaranteed by the Fourteenth Amendment to the U.S. Constitution;

       b.    Grant Plaintiffs a mandatory injunction to prevent the Defendants from continuing the significant and excessive delay in making determinations Social Security disability determinations as a violation of Procedural Due Process of law guaranteed by the Fourteenth Amendment to the U.S. Constitution, but to do so while maintaining statutory and regulatory and constitutional accuracy requirements;

-34-

c.    Award Plaintiffs' costs of suit and reasonable attorneys' fees and

other expenses under *42 U.S.C. § 1988*; and

d.    Grant such additional relief as the interests of justice may

require.

Dated at St. Petersburg, Pinellas County, Florida this 28th day of July, 2023.

_____

Enrique Escarraz, III, Esquire
FBN 113890
Attorney for Plaintiffs
2500 First Avenue South
P.O. Box 847
St. Petersburg, FL  33731
(727) 327-6600 Telephone
(727) 321-6251 Facsimile
rattorne@tampabay.rr.com